EARL FAIRMAN, Jr., Appellant, *v.* WARDEN, NEVADA STATE PRISON, Respondent.

No. 5235

DOROTHY MAE JOHNSON, Also Known as DOROTHY MAE BENSON, Appellant, *v.* SHERIFF OF CLARK COUNTY, State of Nevada, Respondent.

No. 5264

September 19, 1967          431 P.2d 660

*Babcock & Sutton,* of Las Vegas, for Appellant Earl Fairman, Jr.

*Foley, Garner & Shoemaker,* of Las Vegas, for Appellant Dorothy Mae Johnson.

*Harvey Dickerson,* Attorney General, *George E. Franklin, Jr.,* District Attorney, *James D. Santini,* Deputy District Attorney, Clark County, for Respondent Warden, Nevada State Prison, and Respondent Sheriff of Clark County, State of Nevada.

# OPINION

By the Court, COLLINS, J.:

These cases were consolidated for argument and disposition since they arose out of the same incident. Each appeal is from a district court denial of habeas corpus following preliminary examination.

Fairman contends that evidence of possession of narcotics was erroneously admitted, because secured by an unconstitutional search and seizure. Fairman and Johnson each urge that there was an insufficient showing of possession to hold either for trial. We find no merit to these contentions and affirm.

A summary of the facts shows that William Harrison arranged to have sexual intercourse for compensation with Dorothy Mae Johnson. They proceeded from a bar to room 516 of the West Motel in Las Vegas, Nevada. When they arrived, the room, registered to one Lionel Winder, was occupied by appellant Fairman, stepson of Winder. Fairman immediately departed. When Harrison and Johnson had completed intercourse, Johnson responded to a rap on the door and admitted Thelma Dupree and another woman to the room. All three women retired to the bathroom, after which Dupree came out, obtained a gun from a dresser drawer in the room and robbed Harrison of approximately $60. Harrison, clad only in his trousers, left the room, went to the manager's office, and called the police.

Harrison returned to the area of his automobile, observed the three women leave room 516 and proceed upstairs where, from the balcony, Thelma Dupree pointed the gun at the victim in a threatening manner and then, along with the other women, disappeared into another room. Harrison took a knife from his glove compartment and proceeded upstairs to recover his stolen money. When one of the girls appeared he started to

chase her. At this moment Fairman appeared, and using the lid of a garbage can as a weapon, prevented Harrison from pursuing her and chased him off. Harrison went back downstairs and waited for the police.

Officers Mouliot and Chappell responded to the call and were met by Harrison at the motel. He related the foregoing circumstances to them. The officers obtained a key from the manager to room 516. They entered the unoccupied room to retrieve the remainder of Harrison's clothes. His clothing was later found in the bushes outside the motel. While in the room they neither searched for nor removed anything. Harrison, noticing a photograph of Dupree in the room, identified her as the one who had held the gun on him and taken his money. He described the appearance and dress of Fairman and the three women to the policemen.

The officers then commenced a stake-out of the room. They observed Fairman and Willie Corbin enter the room. Shortly thereafter, they saw Fairman emerge from the room, look furtively up and down the street, go to some bushes, pick up a brown paper sack and re-enter the room. Being satisfied that Fairman was the person identified by Harrison as the man who had prevented him from pursuing the women following the robbery, the officers again secured a key to the room and entered it unannounced. They had no arrest or search warrants.

Upon entering the room they found Fairman, Corbin and the three women. After identifying themselves as police officers, they placed Fairman and the women under arrest for robbery. The officers then commenced a search of the room for the gun.

Fairman, who was standing in the room, became combative and resistful during the search. Dorothy Mae Johnson was sitting on the bed upon entry of the officers and remained there during commencement of the search. She arose once to put on some slippers but immediately sat down on the same place on the bed. When asked by the officers to move, she refused to do so and asked, "Why?" They told her that it was to enable them to search the bed. She then complied. Under the covers of the bed, in the exact place she had been sitting, the officers found a brown paper sack containing 19 packets of marijuana and a roach (a half-smoked marijuana cigarette). The suspects were then advised they were under arrest for possession of narcotics.

Under Nevada law an officer may make an arrest without a warrant when he has reasonable cause to believe a felony has been committed, and that the suspect committed it. NRS 171.235. Probable cause exists if the facts and circumstances

known to the officers at the moment of the arrest would warrant a prudent man in believing that a felony had been committed by the person arrested. Gordon v. State, 83 Nev. 177, 426 P.2d 424 (1967); Nootenboom v. State, 82 Nev. 329, 418 P.2d 490 (1966). Here the officers testified to facts known to them from Harrison's account and their own observations about Fairman's identity and participation in the robbery. There was probable cause to arrest.

Incident to the arrest for robbery, the officers had the constitutional right to search not only the persons arrested but the premises where they were arrested and to seize weapons, instruments of the crime, and contraband. Abel v. United States, 362 U.S. 217 (1960); Preston v. United States, 376 U.S. 364 (1964). Here, the search was for the pistol, an instrument used in the perpetration of the crime. Their lawful search disclosed narcotics, the possession of which was illegal per se and a continuing felony. Arabia v. State, 82 Nev. 453, 421 P.2d 952 (1966).

The method of intrusion may sometimes invalidate an arrest. Nevada, by statute, permits officers to break into a dwelling place to make an arrest after demanding admittance and explaining their purpose. NRS 171.275. However, it has been recognized that circumstances may exist where an entrance which does not strictly follow this standard is still permissible. Ker v. California, 374 U.S. 23 (1962). The officers in this case, knowing that Fairman was present in the room, and that an armed robbery had been committed with a gun initially located in that room, had the right, for protection of their own persons, to deviate from the statute and enter the room unannounced. Any demand for admission they made could well have been answered by a bullet. They were not obligated to take that risk.

In order to hold one for narcotics possession, it is necessary to show dominion and control over the substance (Doyle v. State, 82 Nev. 242, 415 P.2d 323 (1966)) and knowledge that it is of a narcotic character (Overton v. State, 78 Nev. 198, 370 P.2d 677 (1962), citing Wallace v. State, 77 Nev. 123, 359 P.2d 749 (1961)). These elements may be shown by direct evidence or by circumstantial evidence and reasonably drawn inferences. People v. Lunbeck, 303 P.2d 1082 (Cal. 1956). The requisite elements to show Fairman's possession of

narcotics may be inferred from the evidence. He had prior attachment to the room. He was seen to come out of the room, take a brown paper sack from the bushes, and return to the room. He was arrested there and objected strenuously to a search of the room by the officers. He was in the room when the narcotics were found in a similar brown paper sack.

Dorothy Mae Johnson also contends the state has failed to show (1) dominion and control; (2) knowledge of the presence of the narcotic substance; and (3) knowledge of the narcotic nature of the substance by her. Each of these elements of proof can be shown by circumstantial evidence from which inferences can be drawn. To say, as she sat on the brown paper sack containing 19 packets of marijuana, that she had no dominion or control, or knowledge of the presence of the substance, strains credulity. Her effort to keep the packet concealed from the officers during their search of the room strongly suggests her knowledge that the package contained contraband and that she intended to conceal the package. Cf. People v. Martinez, 336 P.2d 988 (Cal. 1959).

Affirmed.

THOMPSON, C. J. and ZENOFF, J. concur.