## JOHN EVANS BURTON, Appellant, v. THE STATE OF NEVADA, Respondent.

### No. 5357

March 5, 1968                         437 P.2d 861

[Rehearing denied March 26, 1968]

*Richard H. Bryan,* Public Defender, *Robert N. Peccole,* Chief Deputy, Clark County, for Appellant.

*Harvey Dickerson,* Attorney General, *George E. Franklin, Jr.,* District Attorney, *George Spizzirri,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, COLLINS, J.:

On November 28, 1966, Ruth Johnson, the cashier at the J & J Market in Las Vegas, Nevada, called the police and reported that the market had just been robbed by three Negro males in their mid-20's. When officers arrived on the scene, she and Lawrence Thornton, who had also been robbed of his wallet, told the officers that three Negroes between 20–30 years of age had robbed them and gave descriptions of those persons to the police. A witness who was outside the market at the time of the robbery stated he saw four Negro males in an auto drive up to the market; that three of them left the car, went inside, and hurriedly came out a short time later; that

the engine was running all the time the three were inside the store; that this overall conduct aroused his suspicion, causing him to take down the license number of the vehicle.

The above information was broadcast over the police radio and approximately 15 minutes later a car bearing the license number in question was found at an apartment house at 1500 Helen Street. Upon questioning people outside the building, the officers learned that four males had driven up in the car a short time before and had entered the building.

In response to a knock on one of the doors in the apartment building, Dennis Blood answered. The officers placed him under arrest for the robbery when they learned the car in question belonged to him. They immediately entered the apartment and found three other Negro males, among them the defendant Burton, a person named Himmage and one named Walker. They were also placed under arrest for robbery.

Burton requested a separate trial on the grounds that 1) evidence inadmissible as to him would be used against his co-defendants; 2) the defendants wished to rely on different alibis; 3) Himmage had a prior felony record—evidence admissible as to Himmage but potentially prejudicial and inadmissible as to himself. The motion was granted.

At appellant Burton's separate trial, the following evidence was introduced: (1) a group photograph of the persons involved in the police line-up; (2) identification by the cashier, Mrs. Johnson, of co-defendant Himmage from the above-mentioned photograph; (3) testimony of the witness Thornton, including an identification by him of Burton, Blood, and Himmage from the photograph; (4) a latent fingerprint of Himmage taken from the place of the robbery; (5) testimony of the arresting officers concerning the results of their search of the apartment. The jury found appellant guilty of two counts of robbery and this appeal followed.

1. Appellant contends that the photograph showing the participants involved in the police line-up and testimony concerning the result of that line-up were improperly admitted into evidence due to the impropriety of (1) the foundation laid for the photograph, and (2) the line-up itself.

The foundation is questioned because the witness Thornton stated, in response to a preliminary question, that the participants were in a different order in the actual line-up than in the photograph, and therefore the photograph was not "a fair, correct and true representation of the scene it purported to represent." State v. Gambetta, 66 Nev. 317, 208 P.2d 1059 (1949). However, the record shows that the photograph

was admitted not as a correct representation of the line-up[1] but as a true and accurate depiction of the six individuals involved in the line-up that day. The foundation thus laid for the photograph was proper.

Appellant next contends that the line-up itself was constitutionally infirm because he did not have counsel present at the time and because four of six participants in the line-up were suspects in this particular case.

Since the proceedings in this case were nearly six months prior to the announcement of the procedural safeguards set forth in United States v. Wade, 388 U.S. 218 (1967); Gilbert v. California, 388 U.S. 263 (1967); and Stovall v. Denno, 388 U.S. 293 (1967), the absence of counsel, in itself, is not reversible error. Hummel v. Sheriff, 83 Nev. 370, 432 P.2d 330 (1967).

We therefore turn to the issue of the fairness of the line-up itself, a complaint which may be examined regardless of the date of the proceedings. Stovall v. Denno, supra; Calbert v. State, 84 Nev. 148, 437 P.2d 628 (1968). Appellant contends that because four of the six participants in the line-up were suspects in this case, the line-up lacked the inherent fairness necessary to satisfy the requirement of due process. To illustrate his point he cites the facts that the cashier, Mrs. Johnson, identified Himmage and Walker at the line-up, Himmage and Blood at the preliminary hearing, and only Himmage at the trial. However, these inconsistencies were all brought to the attention of the jury by defense counsel whose exclusive function it was to determine credibility of the witness and weigh her testimony. See People v. Diaz, 427 P.2d 505 (Cal. 1967); State v. Villegas, 420 P.2d 940 (Ariz. 1966). Appellant urges no other grounds in his claim of unfairness, such as substantial variances in the height, weight, or age of the participants in the line-up. We conclude from examining the totality of the circumstances, pursuant to Stovall, that there was no inherent unfairness.

2. Appellant's next assignment of error attacks evidence presented by the prosecution identifying Himmage as being a participant in the crime. Evidence to be admissible must be relevant to the case at bar. The state's position is that the evidence placing Himmage at the scene of the crime is highly

---

[1]An objection to its introduction on this basis was sustained.

relevant in the trial of the appellant Burton. We agree. The relevancy arises out of the fact that Himmage and the appellant were found together shortly after the robbery. The car with the previously identified license number was parked downstairs; the number and descriptions of the men found in the apartment are consistent with that given the police by the robbed victims; the time lapse between the crime and the arrest was also relatively short. For the state to prove those facts and also that Himmage was a participant in the crime creates a chain of circumstantial evidence tending to show that appellant Burton was a participant as well. People v. Asey, 229 N.E.2d 368 (Ill.App. 1967). The evidence would therefore be relevant and admissible.

Appellant's next contention is that evidence justifying his motion for severance pursuant to NRS 175.205 amounted to a conclusive ruling that such evidence was inadmissible against him at trial. That argument is without merit. We cannot say ipso facto a motion for severance operates as a motion to suppress. Each motion serves a different purpose and object. Granting of one motion does not preclude consideration of the other.

3. Appellant next raises for our consideration the propriety of the testimony of the arresting officers as to the fruits of their search of the apartment. He questions particularly the fact that the officers were allowed to testify that they found a gun and some money, when the items themselves were not admitted in evidence when objected to for lack of a proper foundation. He also questions the legality of the search itself.

The record indicates that the court sustained an objection to the mention of the pistol, strongly admonished the jury to disregard the remark and, out of the presence of the jury, admonished both the witnesses and counsel not to mention the weapon again.[2] The witnesses and the counsel adhered to the admonishment.

Officer Lyons testified that he found $20 in a brown leather cigarette case between the mattress and boxsprings of one of the beds. Officer Huggins testified that he found approximately $34 in bills and change secreted in a bag inside the apartment's waterheater. Defense counsel objected to the mention of the latter money because, for want of proper foundation, the money itself had not been admitted in evidence.[3] The court

---

[2, 3]"While these rulings are not challenged on appeal by the state, we are not convinced of their correctness. Circumstantially they both tend to prove guilt.

overruled his objection. Defense counsel then attempted to impeach Officer Huggins by introducing his signed report showing the amount of money found by him to be approximately $15. Since the jury was no doubt aware of the difference between the amount stolen, approximately $150, and the amount found by the officer, as well as the possible doubt thrown upon his testimony, it was for them to assign to such evidence the weight and credibility they felt proper. Under these circumstances, we see no prejudice to defendant.

The contention that the entire search was improper is without merit. The arrest, although made without a warrant, was based upon sufficient probable cause and therefore lawful. (Schnepp v. State, 82 Nev. 257, 259, 415 P.2d 619 (1966); Gordon v. State, 83 Nev. 177, 426 P.2d 424 (1967)). The search conducted incident thereto is also legal. Fairman v. Warden, 83 Nev. 332, 431 P.2d 660 (1967).

4. Finally, appellant says that the trial court erred in not granting him a new trial on the basis of newly discovered evidence. NRS 175.535. The evidence presented to the court consisted of a letter written by Himmage in which he stated he would take the stand and prove that Burton was not guilty, an affidavit of Himmage admitting his own guilt and purporting to exculpate Burton, and an affidavit of Burton's counsel relating to circumstances and the time of discovery of the evidence. To satisfy NRS 175.535 there must be a factual showing that the newly discovered evidence could not have been obtained through due diligence prior to trial, and that it would have the probable effect of a different verdict on retrial. Pacheco v. State, 81 Nev. 639, 408 P.2d 715 (1965). That Himmage was known before and during trial to all other parties and their counsel as a source of evidence as to the commission of the robberies cannot be refuted from the record. We believe evidence of the kind offered here from a co-defendant following his own conviction should be viewed with caution. Under these standards, the trial court's denial of the motion was proper.

The conviction is affirmed.

THOMPSON, C. J., ZENOFF, BATJER, and MOWBRAY, JJ., concur.