ROBERT E. WOERNER, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

Nos. 5552 and 5645

May 1, 1969                              453 P.2d 1004

*James D. Santini,* Public Defender, and *Earl W. White, Jr.,* Deputy Public Defender, Clark County, for Appellant.

*Harvey Dickerson,* Attorney General; and *George E. Franklin, Jr.,* District Attorney, and *Richard D. Weisbart,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

Robert E. Woerner was tried by jury in two separate trials in the district court. He was convicted, in one trial, of unlawful possession of marijuana (NRS 453.030) and, in the other trial, of unlawful possession of LSD (NRS 454.460). The cases have been consolidated in this appeal because the issues presented are identical; namely, (1) that both the marijuana and the LSD introduced during the trials were recovered as a result of illegal search and seizure and (2) that the evidence received was insufficient to establish that the drugs were in Woerner's possession.

Woerner was a registered guest at the Colonial House in Las Vegas. At approximately 7 p.m. on June 24, 1967, the

motel's engineer-security officer went to Woerner's room to investigate a leaking water pipe. In the room were a number of people, several of whom had been involved in difficulties with the motel on previous occasions. As the evening wore on, the security officer noticed that traffic into and out of Woerner's room was on the increase; so he notified the manager, who telephoned the police. Two plain-clothed detectives arrived at about 11:30 p.m. and set up watch in a room adjoining Woerner's. They, too, observed the steady stream of traffic into and out of Woerner's room, and they soon detected a strong odor of marijuana. They stepped into the hallway and noticed that the door to Woerner's room was completely open. This was the only door open in that area of the hallway. They knocked on Woerner's door, and a male voice invited them to enter. They did so and immediately identified themselves as Clark County Sheriff's officers. The officers later testified that, as they entered Woerner's room, the odor of marijuana intensified. Once inside, they noticed first a switchblade knife on the dresser. They asked who was the owner of the knife. No one in the room replied to their inquiry. The officers then advised the occupants of the room that they were under arrest for the unlawful possession of the knife, a gross misdemeanor. It was at this moment that the officers observed on a table in the room a plastic bag containing a leafy substance which appeared to be marijuana and another clear plastic bag containing what the officers believed to be LSD. A later chemical analysis confirmed their observations. Next to the marijuana on the table was a piece of copper tubing which at one end was shaped like a pipe bowl. The officers then placed Woerner and the others under arrest for unlawful possession of marijuana and LSD.

Motions to suppress the introduction of the marijuana and the LSD were made prior to both trials, and the motions were denied. Likewise, motions for new trials were denied. We agree with the rulings of the trial judges, and we affirm both convictions.

1. NRS 171.124[1] provides that a peace officer may make

[1]NRS 171.124. "Arrests by peace officers.
"1. A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:
"(a) For a public offense committed or attempted in his presence.
"(b) When a person arrested has committed a felony, although not in his presence.
"(c) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

an arrest without a warrant when a person has committed a felony in his presence. Here, the officers had every reason to believe that a felony was being committed. After the officers detected the strong odor of marijuana coming through the open doorway of Woerner's room, they knocked and were invited to enter. Once inside Woerner's room, they noticed in full view the marijuana and the LSD. As the Supreme Court of the United States said in Harris v. United States, 390 U.S. 234, 236 (1968): "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. *Ker* v. *California*, 374 U.S. 23, 42–43 (1963); *United States* v. *Lee*, 274 U.S. 559 (1927); *Hester* v. *United States*, 265 U.S. 57 (1924)." See also LeBlanc v. State, 424 S.W.2d 434 (Tex.App. 1968). Since the officers had a right to be in Woerner's room, it was proper to seize the marijuana and the LSD, and the drugs were lawfully received in evidence.

2. Woerner claims that the evidence received was insufficient to establish that he had possession of the marijuana and the LSD. We do not agree. These two drugs were in plain view as the officers entered Woerner's room; the air reeked with the odor of marijuana; and the remnants of burnt marijuana were found in the brass tubing, which apparently had been made into a pipe so that the marijuana could be smoked. This court said, in Fairman v. Warden, 83 Nev. 332, 336, 431 P.2d 660, 663 (1967):

"In order to hold one for narcotics possession, it is necessary to show dominion and control over the substance (Doyle v. State, 82 Nev. 242, 415 P.2d 323 (1966)) and knowledge that it is of a narcotic character (Overton v. State, 78 Nev. 198, 370 P.2d 677 (1962), citing Wallace v. State, 77 Nev. 123, 359 P.2d 749 (1961)). These elements may be shown by direct evidence or by circumstantial evidence and reasonably drawn inferences. People v. Lunbeck, 303 P.2d 1082 (Cal. 1956)."

Sufficient evidence was introduced during the trials of both cases to support the juries' verdicts that Woerner had possession of the marijuana and the LSD, and we affirm both convictions.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.