**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John THOMPSON, Defendant-Appellant.
No. 27129.**

United States Court of Appeals,
Fifth Circuit.

Jan. 30, 1970.

Rehearing Denied March 24, 1970.

William L. Crull, III, New Orleans, La., (Ct. Apptd.), for appellant.

Louis C. LaCour, U. S. Atty., Horace P. Rowley, III, Asst. U. S. Atty., New Orleans, La., for appellee.

Before WISDOM, THORNBERRY and SIMPSON, Circuit Judges.

THORNBERRY, Circuit Judge:

This is an appeal from a conviction for armed robbery of a national bank. On May 25, 1967, defendant and two other men were indicted for violating 18 U.S.C. § 2113(a), (d). The indictment alleged that the defendants robbed the Magazine Street Branch of the National Bank of Commerce in New Orleans of $60,019.00 and that they put in jeopardy the lives of the tellers by using pistols. On June 21, defendant pleaded not guilty. After a two-day hearing before United States District Judge James Comiskey, defendant's pre-trial motion to suppress evidence and a confession was denied; his motion for severance, however, was granted.

On September 3 and 4, 1968, the case against defendant was tried by a jury before United States District Judge Fred Cassibry. The government introduced the testimony of fifteen witnesses and seven exhibits, and then rested. Defendant introduced one exhibit. Defendant did not testify. The jury found defendant guilty as charged, and on November 6, 1968, Judge Cassibry sentenced him to prison for twenty years.

Defendant appeals, alleging that:

(1) The trial court erred in admitting evidence seized at defendant's house because the search and seizure was based on the invalid consent of defendant's wife.

(2) The trial court erred in admitting testimony regarding evidence seized at the house of defendant's mother since a search warrant was never introduced into evidence or placed in the record in any manner.

(3) The trial court erred in admitting defendant's confession into evidence because the confession was not voluntary.

(4) The trial court erred in admitting the FDIC certificate into evidence as

proof of the insured and national character of the victim bank.[1]

The sequence of events leading to the arrest of defendant is as follows: By the afternoon of the day of the robbery (January 13, 1967), defendant had become a suspect. About 7:00 p.m., several New Orleans police officers went to defendant's apartment. Defendant was not there, but his wife was. The officers informed her that they did not have a search warrant and requested permission to search the apartment. They advised her that her husband was a suspect and informed her of her right to refuse permission to search. The police explained the written "Permission for Search and Seizure" form to her, and she then consented in writing to the search. The officers searched the apartment and seized two pieces of cut women's stocking (which the robbers had worn over their faces) and one National Bank of Commerce money band from the garbage can in the kitchen. Defendant's wife then informed them that some of the stolen money was at the home of defendant's mother.

On the basis of this information, the police applied to a state criminal district judge for a search warrant for the house of defendant's mother, and the warrant was issued. About 11:00 p.m. of the day of the robbery, the police searched the premises of defendant's mother and seized twenty thousand dollars of the stolen money.

On the morning of January 14, the New Orleans police applied to a state criminal district judge for a warrant to arrest defendant. The warrant was issued. Later that same day, the police were informed that the suspected bandits were at an apartment on Florida Avenue in New Orleans. About midnight the police went to the apartment but found no one there. They waited, and about 6:00 a.m. on the morning of January 15, defendant and a co-defendant and two girls entered the apartment, and defendant was disarmed and arrested.

### I.

Defendant argues that it was reversible error for the trial court to admit the evidence that was seized from his home. The search of defendant's house was conducted without a search warrant but was consented to by defendant's wife. Defendant argues that the search was illegal because (1) his wife did not have authority to consent to the search, and (2) her consent was not freely and voluntarily given.

It is the rule in this Circuit that " 'where two persons have equal rights to the use or occupation of premises, either may give consent to a search, and the evidence thus disclosed can be used against either.' " Gurleski v. United States, 5th Cir. 1968, 405 F.2d 253, 262, quoting United States v. Sferas, 7th Cir. 1954, 210 F.2d 69, 74. It has been generally assumed in this Circuit, however, that a wife, unlike other co-inhabitants, does not have authority to consent to a search of the premises she shares with her husband. In Cofer v. United States, 5th Cir. 1930, 37 F.2d 677, Judge Grubb stated:

We think the gun was delivered to the sheriff by the wife of Lee Cofer in response to the search warrant, which the sheriff had read to her, and not voluntarily. The wife was without authority to bind her husband

---

1. Defendant also alleges that the trial court erred in rendering judgment and sentencing defendant under a verdict that was "ambiguous, uncertain, not obviously applicable to [defendant] and not responsive to the indictment or to the charge to the jury." It will suffice to say that this argument is without merit. The jury's verdict was terse but this did not prejudice defendant in any way. Although the verdict did not name defendant, it is clear that the verdict was directed to him since he was being tried alone. There was no prejudicial error committed in rendering judgment and sentencing defendant on the basis of the jury's terse verdict.

by waiving a legal warrant, or consenting to an unauthorized search.

Judge Grubb gave no reasons for his statement that a wife was without authority to bind her husband by consenting to a search of the premises they shared. In light of the Court's holding that the wife's consent was not voluntary, the Court's statement concerning a wife's inability to consent to a search might be considered to be dicta. Dicta or not, the rule is contrary to modern authority, see United States v. Pugliese, 2d Cir. 1945, 153 F.2d 497; United States v. Airdo, 7th Cir. 1967, 380 F.2d 103; Foster v. United States, 8th Cir. 1960, 281 F.2d 310; Roberts v. United States, 8th Cir. 1964, 332 F.2d 892; Stein v. United States, 9th Cir. 1948, 166 F.2d 851; Nelson v. California, 9th Cir. 1965, 346 F.2d 73; State v. Comeaux, 252 La. 481, 211 So.2d 620 (1968), and the time has come to recognize that this forty-year-old statement no longer has vitality.

■ As we have noted, this Court has held that persons having equal rights to the use or occupation of premises may give consent to a search of those premises and the evidence thus disclosed can be used against either. Gurleski v. United States, supra. That is a sensible rule, and it would be incongruous to hold that a wife, who certainly has the rights of use and occupation of the premises she shares with her husband, cannot consent to a search of those premises. We agree with the Eighth Circuit that

> \* \* \* the right of the wife \* \* \* to enter the home which was in her possession and control cannot be seriously questioned and that her invitation to and authorization to the officers to enter and search was an outgrowth thereof. It is not a question of agency, for a wife should not be held to have authority to waive her husband's constitutional rights. This is a question of the wife's own rights to authorize entry into the premises where she lives and of which she had control.

Roberts v. United States, supra, 332 F. 2d at 896. Our holding that a wife can consent to a search of the premises she shares with her husband is limited to those premises under mutual control. The issue of whether a wife can consent to the search of premises reserved exclusively for the husband is not before us, and we express no opinion on that question.

■ We must now decide whether Mrs. Thompson's consent to search the apartment was voluntarily given, for if this search was conducted without voluntary consent it was unreasonable and thus contrary to the Fourth Amendment of the United States Constitution. Defendant argues that, because of the circumstances, his wife was intimidated and her consent to the search was merely a frightened submission to authority. On the evening of the robbery, several non-uniformed police officers went to defendant's apartment but found no one there. The officers learned that Mrs. Thompson was at work and sent a police car to pick her up. When she arrived at the apartment with the two police officers who had picked her up from work, it was about 7:00 p.m. and dark. Mrs. Thompson was aware that all the men present were police officers, and invited them into the apartment. Therein, she was told of her right to remain silent and to have counsel. The officers informed her that her husband was suspected of bank robbery and that they believed evidence of the crime was inside the apartment. They asked her permission to search the premises and explained the written consent form to her. She thereupon gave her consent orally and in writing. The police searched the apartment and found incriminating evidence in a garbage can in the kitchen.

Defendant's argument is that because his wife was picked up from work by police officers, because there were several officers at the apartment, and because it was nighttime, her consent to the search was coerced and invalid. We disagree. After a careful review of the record, we can only conclude that the po-

lice officers did not coerce or intimidate Mrs. Thompson, and that she freely and intelligently consented to the search. The mere facts that there were several plain clothes police officers present, that she was picked up from work, and that it was nighttime simply do not compel a conclusion that defendant's wife was intimidated. The government sustained its burden of showing that the consent was voluntary: The testimony shows that Mrs. Thompson was adequately warned of her rights and that she was informed that a search could not be conducted without her consent. She orally agreed to the search and signed a written consent form. There is simply no basis to conclude from the record that Mrs. Thompson's consent was involuntary. Since the search of defendant's house was based on his wife's voluntary consent and was limited in scope, duration and purpose, we hold that the search was reasonable and the evidence seized was admissible into evidence. *See generally* Gurleski v. United States, *supra*; Teasley v. United States, 9th Cir. 1961, 292 F.2d 460.

## II.

In his pre-trial motion, defendant sought to suppress the introduction of the currency seized at the home of his mother. The motion to suppress was denied. At the trial, the government introduced testimony by various FBI agents and New Orleans police officers about the large sum of money. The money itself was never offered or filed into the record as an exhibit. Defendant claims, however, that the extensive testimony of the seizure of the bills was as damaging as introduction of the bills themselves would have been. Defendant argues that his motion to suppress should have been granted, and that the trial court's allowance of testimony concerning the seized money was prejudicial error and warrants reversal of his conviction.

It is important to note that defendant is not alleging that the search and seizure itself was unlawful. He merely argues that since the warrant was never placed into evidence he did not have an opportunity to determine whether the warrant actually existed, and, if it did, whether it was lawfully issued and executed. The argument is without merit.

 There was uncontradicted testimony at the hearing that a Louisiana criminal district judge issued a warrant for the search, and this testimony was sufficient to establish the issuance of the warrant. *See* Castle v. United States, 5th Cir. 1961, 287 F.2d 657; United States v. Burkhart, 6th Cir. 1965, 347 F.2d 772. Since the issuance of a warrant was effectively established, the burden of establishing that the search was illegal was on movant-defendant. Rogers v. United States, 5th Cir. 1964, 330 F.2d 535; Batten v. United States, 5th Cir. 1951, 188 F.2d 75; Chin Kay v. United States, 9th Cir. 1963, 311 F.2d 317. Defendant, however, completely failed to sustain his burden of proving that the warrant was illegally issued or executed. Defendant had access to the public records where the warrant was filed; he could have introduced the document into evidence in order to prove that it was illegally issued or executed. He did not do so. In truth, defendant's only complaint is that the prosecution did not introduce the warrant into evidence. We are aware of no rule of procedure, evidence or law that requires the prosecution to introduce a search warrant into evidence under such circumstances as are presented here. There was no error in the trial judge's allowance of testimony concerning the evidence seized at the house of defendant's mother.

## III.

Defendant argues that the trial court erred in admitting defendant's confession because the confession was not voluntarily made. As is usually the case, there is a dispute about the events leading to and surrounding the confession. Defendant claims that he was physically abused and mentally intimidated; the government claims that defendant was

decently treated, adequately warned of his constitutional rights, and that his confession was intelligently and freely made.

The general sequence of events is as follows: About 6 a.m. on the morning of January 15, 1967, defendant and a co-defendant were arrested by New Orleans police officers at an apartment in New Orleans. Two women were accompanying the men at the time of their arrest. The arresting officers ordered defendant to lie on the floor while they searched and disarmed him. Defendant claims that he was beaten at the time of his arrest. Defendant was given a Miranda warning, and then put in a police car and taken to police headquarters. Defendant claims he was slapped in the face while en route to the police station. They arrived at headquarters about 7:00 a.m. At headquarters, defendant was given Miranda warnings orally and in writing; defendant signed a written waiver and was given a copy of it. Defendant and the other accused bandit were interviewed together until about 10:00 a.m., at which time defendant was taken across the street to Central Lockup and was booked. Booking took about an hour. Defendant was then brought back to an office at headquarters. From 11:00 a.m. to 1:00 p.m. defendant was interviewed by two FBI agents in the presence of two New Orleans police officers. Before this interview began, defendant was given oral and written Miranda warnings. Defendant could read, and the officers testified that defendant appeared to understand his rights and spoke clearly throughout the interview. After the statement was typed, defendant reportedly read and signed every page. Defendant claims that for much of this time his hands were handcuffed behind his back and he was frequently punched in the stomach by officers. He also claims that the police threatened recriminations against his family if he did not talk. He further testified that the police knew he was a drug addict and that he was sick during the interview.

A confession is not admissible if it is not given voluntarily. Rogers v. Richmond, 1961, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760. The "trial judge, another judge, or another jury" must make a "clear-cut determination" that a confession was freely and voluntarily given before the confession is heard by the trial jury. Jackson v. Denno, 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. Although the judge conducting the hearing on voluntariness need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity. Sims v. Georgia, 1967, 385 U.S. 538, 544, 87 S. Ct. 639, 17 L.Ed.2d 593.

These standards were carefully complied with in the case before us. In his pre-trial motion, defendant moved to suppress his confession on the grounds that it was involuntary. Judge Comiskey conducted a hearing on the issue of voluntariness, and considered and resolved the earlier-mentioned disputed facts upon which the voluntariness issue depended. Defendant testified in his own behalf, but his testimony was contradicted by the testimony of five government witnesses. Judge Comiskey decided that the confession was voluntary and denied the motion to suppress. At the trial, Judge Cassibry instructed the jurors that they were to decide whether defendant's confession was voluntary, and informed them that in making that determination they must be convinced beyond a reasonable doubt that the confession was voluntary. This procedure was legally correct and imminently fair. Kristiansand v. United States, 5th Cir. 1967, 384 F.2d 301. It made no difference that the independent voluntariness hearing was not conducted by the same judge that conducted the trial, because the mandate of Jackson v. Denno, *supra,* is that a voluntariness determination should be made by the "trial judge, *another judge,* or another jury" (emphasis added).

We can find no error in the trial court's admission of defendant's confes-

sion. The procedures followed for determining the voluntariness of defendant's confession conformed to the guidelines set out by the United States Supreme Court and this Court. There is nothing in the record that leads us to conclude as a matter of law that the district judge and the jury were wrong in determining that defendant's confession was voluntary.

### IV.

In order to sustain a conviction under 18 U.S.C. § 2113, it must be shown that the bank which defendant is charged with robbing was a "member bank of the Federal Reserve System", or "banking institution organized or operating under the laws of the United States", or "a bank the deposits of which are insured by the Federal Deposit Insurance Corporation." The National Bank of Commerce in New Orleans, the bank that defendant was convicted of robbing, is a member bank of the Federal Reserve and a bank whose deposits were insured by the FDIC. At the trial, the judge admitted over the defendant's objection an FDIC certificate. The certificate stated that "each depositor is provided maximum deposit insurance of $15,000 in the National Bank of Commerce in New Orleans, New Orleans, Louisiana." Defendant argues that it was error for the trial court to admit this certificate as proof of the national character of the victim bank. He claims that the certificate was nothing more than a decorative plaque.

While we are at a loss to understand why the government did not offer better proof of the national character of the victim bank, we hold that the certificate and the testimony of the bank's vice-president that the bank's deposits were insured by the FDIC constituted substantial evidence that the bank was a bank "the deposits of which are insured by the Federal Deposit Insurance Corporation." *See* United States v. Skiba, 7th Cir. 1959, 271 F.2d 644; United States v. Bostic, E.D. Pa., 1966, 258 F.Supp. 977. Cf. Cook v. United States, 5th Cir. 1963, 320 F.2d 258, 259.

Finding that no reversible error was committed in the trial court, we affirm defendant's conviction.

Affirmed.