ONE 1970 CHEVROLET MOTOR VEHICLE, IDENTI–
FICATION NO. 13670L125718 BEARING NEVADA
LICENSE NO. CL4947, Appellant, *v.* THE COUNTY
OF NYE, STATE OF NEVADA, Respondent.

No. 7133

January 17, 1974                    518 P.2d 38

*Goodman and Snyder* and *Douglas G. Crosby,* of Las Vegas, for Appellant.

*William P. Beko,* District Attorney, and *Peter L. Knight,* Assistant District Attorney, Nye County, for Respondent.

# OPINION

By the Court, MOWBRAY, J.:

Nye County filed forfeiture proceedings against a Chevrolet automobile being used in violation of NRS 453.145 of the Uniform Narcotic Drug Act.[1] This appeal is from an order adjudging forfeiture.

1. Prior to the seizure of the car, Nye County officers had maintained a loose surveillance of the activities of several persons in the Pahrump Valley, including appellant's owner (Harold Dittmer) and a juvenile. On June 28, 1971, the juvenile was taken into custody. She readily admitted using dangerous drugs and marijuana. She confirmed the officers' suspicions that she had been receiving pills, which she believed to be illegal drugs, from Dittmer during his visits to Pahrump Valley. She advised the officers of the locations in Dittmer's car and on his person where the drugs were normally concealed. She also advised the officers that she expected Dittmer to be in Pahrump on June 29, 1971, as he called her just prior to her arrest and she had asked him to come to Pahrump the night of June 29. Further information given to the officers was that Dittmer was to meet the juvenile at the Pahrump Restaurant and that she expected him to have some pills, as he usually did. The juvenile testified at the trial that she had known Dittmer for some time, both in Las Vegas and in Pahrump, and that he had furnished her with pills on a number of trips to Pahrump.

A lieutenant and a deputy sheriff of the Nye County Sheriff's office were on patrol south of Pahrump on the evening of June 29, 1971, when they observed the vehicle being driven on a public highway headed toward Pahrump. They followed the car to the Pahrump Restaurant, and when Dittmer came out of the restaurant and returned to the car, one of the officers

---

[1]The subject of forfeitures is now governed by NRS 453.301 et seq. of the Uniform Controlled Substances Act.

advised him they were going to search his car. The officer testified that he exhibited the original of a search warrant to Dittmer and handed him a copy. The search of the car disclosed a number of items, some of which were later identified by an expert witness as secobarbital, a derivative of barbituric acid; amphetamines; and leaf marijuana or Cannibis Sativa L. Dittmer was placed under arrest and given a receipt for the items taken in the search. Further testimony disclosed that the search warrant was issued by a justice of the peace of Pahrump Township, predicated on an affidavit signed by the officer who was the resident deputy sheriff in Pahrump and who had taken the juvenile into custody.

The trial judge admitted into evidence, over appellant's objection, the narcotics obtained in the search. Appellant assigns error, claiming that Nye County was required to produce the search warrant and the supporting affidavit as a condition to offering in evidence the fruits of the search.

2. Evidence illegally obtained in contravention of the Fourth and Fourteenth Amendments of the United States Constitution is excluded in forfeiture proceedings as well as in criminal prosecutions. One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693 (1965). It is uncontradicted that a search warrant was issued in this case. Castle v. United States, 287 F.2d 657 (5th Cir. 1961); United States v. Burkhart, 347 F.2d 772 (6th Cir. 1965).

In Schnepp v. State, 82 Nev. 257, 260, 415 P.2d 619, 621 (1966), this court stated:

"Ordinarily, the burden of showing an illegal search and seizure is on the moving party. Lyles v. States, 330 P.2d 734 (Okla. [App.] 1958). . . ."

The court then noted a distinction in this burden that it has always observed where the evidence was obtained by means other than a search warrant. In such cases, the burden is on the State to prove the evidence was lawfully obtained, as where the search was incident to an arrest, as was the case in Schnepp, *supra,* or where there is a claimed consent to search, as in Thurlow v. State, 81 Nev. 510, 406 P.2d 918 (1965).

It is a well established principle that the party seeking to impeach a search warrant has the burden of establishing the matters complained of and that, if the warrant is regular on its face, it will be presumed that the magistrate properly discharged his duties in issuing it. United States v. Thompson,

421 F.2d 373 (5th Cir. 1970); State v. Yates, 449 P.2d 575 (Kan. 1969), *cert. denied,* 396 U.S. 996 (1969); State v. Kelly, 407 P.2d 95 (Ariz. 1965). Cf. Aguilar v. Texas, 378 U.S. 108 (1964).

Contrary to appellant's contention on appeal, it was its burden to prove the illegality of the search and seizure, and it was not the obligation of the respondent to prove affirmatively that the warrant was regularly issued on the basis of an affidavit showing probable cause.

3. Additionally, appellant asserts a disregard of the best evidence rule as error, claiming that the search warrant itself must be produced to establish the authority of the seizure.

The best evidence rule is designed to prevent the proof of the contents of a writing by secondary evidence. NRS 52.235. The testimony of the officers that they obtained a search warrant, exhibited it to Dittmer, gave him a copy, and conducted a search does not amount to testimony proving what was in the warrant. To make reference to a document by its common designation is not a violation of the best evidence rule. Chicago & N.W. Ry. Co. v. Green, 164 F.2d 55 (8th Cir. 1947). The testimony of the officers that they had a warrant is sufficient to prove its existence. Castle v. United States, *supra;* United States v. Burkhart, *supra.*

4. After the respondent, Nye County, rested its case in the proceedings below, appellant sought to introduce copies of the search warrant and the officer's affidavit that was the predicate for the warrant in an effort to prove that the affidavit did not establish probable cause for the issuance of the warrant and that the warrant itself was improperly issued. The trial judge rejected the offer, on the grounds that it amounted to a motion to suppress evidence, which had not been made prior to trial, and that no good cause was shown for failure to make a timely motion. Appellant claims the rejected offer constitutes reversible error.

The issuance of search warrants in Nevada is governed by NRS 179.015 to NRS 179.115. NRS 179.085 controls the procedure to be followed to suppress evidence or to recover property that was illegally seized.[2]

---

[2]NRS 179.085, in relevant part:

"3. The motion to suppress evidence may also be made in the court where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

Here, the motion to suppress was not made before trial. Appellant made no showing to the trial court that it had no opportunity to make the motion before trial, or that it was unaware of the grounds for the motion, though given an opportunity to do so. Actually, the main thrust of the appellant's approach below was that the petitioner-plaintiff had the burden to prove the legality of the search and that appellant was under no duty to take any affirmative action in this regard.

Since appellant made no factual representation to the trial court that it did not have an opportunity to make a pretrial motion to suppress or that it was not aware of the grounds for the motion, we are unable to hold that the trial court abused its discretion in refusing to entertain the motion at the trial. United States v. Romero, 249 F.2d 371 (2d Cir. 1957); United States v. Di Donato, 301 F.2d 383 (2d Cir. 1962).

5. Finally, the appellant challenges the sufficiency of the evidence upon which the trial judge predicated his finding that appellant was used to violate a provision of the then existing Uniform Narcotic Drug Act. NRS 453.145 of the Uniform Narcotic Drug Act then in effect provided in part: "No vehicle, boat or aircraft shall be forfeited unless the owner thereof authorized or knowingly permitted its use in violation of NRS 453.010 to 453.240, inclusive." Appellant makes much of the fact that the trial judge, in his written decision, stated in part: "The evidence supports an inference that Dittmer had knowledge of the presence of such substances [marijuana and dangerous drugs]; . . ." Appellant argues that a mere "inference" is insufficient to support the requisite knowledge required by the statute. An inference is a deduction which the trier of facts may determine from proven facts. It is often used in evaluating circumstantial evidence. The trial judge did not characterize the case as one in which there was only an inference that a crime had been committed. Rather, the court found that a crime had been committed, the proof of some of the elements of which were deduced from proven facts supported by the record.[3]

---

[3]The trial judge, in the second paragraph of his written decision, stated:

"In the opinion of the Court, there was ample evidence to support the allegations of the petition. That is, the car was owned by Harold Melvin Dittmer; it was seized on or about June 29, 1971, in Nye County, Nevada; it was being operated and driven by Dittmer; marijuana and dangerous drugs were found therein. The evidence supports

Substantive violations of the Uniform Narcotic Drug Act, which require proof of knowledge of the presence of the drugs and knowledge of their narcotic character, do not demand proof of these elements by direct evidence. This court said, in Fairman v. Warden, 83 Nev. 332, 336, 431 P.2d 660, 663 (1967):

"In order to hold one for narcotics possession, it is necessary to show dominion and control over the substance (Doyle v. State, 82 Nev. 242, 415 P.2d 323 (1966)) and knowledge that it is of a narcotic character (Overton v. State, 78 Nev. 198, 370 P.2d 677 (1962), citing Wallace v. State, 77 Nev. 123, 359 P.2d 749 (1961)). These elements may be shown by direct evidence or by circumstantial evidence and reasonably drawn inferences. People v. Lunbeck, 303 P.2d 1082 (Cal. [App.] 1956). . . ." See also Woerner v. State, 85 Nev. 281, 453 P.2d 1004 (1969).

The forfeiture order of the district court is affirmed.

THOMPSON, C. J., and ZENOFF, J., concur.

BATJER, J., concurring:

I concur in the result reached by the majority and agree that the judgment of the district court should be affirmed, however, I disagree with the reasoning of both the majority and the district judge in reaching that result. The right result was reached for the wrong reason. Kraemer v. Kraemer, 79 Nev. 287, 382 P.2d 394 (1963); Foster v. Lewis, 78 Nev. 330, 372 P.2d 679 (1962); Nelson v. Sierra Constr. Corp., 77 Nev. 334, 364 P.2d 402 (1961).

At trial the appellant faced a two phase problem. First it was required to show that the search warrant was wrongly issued and improperly served, and secondly it was required to convince the trial court that the evidence seized pursuant to the warrant should be suppressed. Cf. Coolidge v. New Hampshire, 403 U.S. 443 (1971).

The trial court erred when it relied on NRS 179.085(3) as the basis to deny appellant's offer to introduce into evidence copies of the search warrant and accompanying affidavit to show lack of probable cause for issuance of the warrant. Every

an inference that Dittmer had knowledge of the presence of such substances; such substances were in his possession and were being transported by him and that he had knowledge of their character; and that the quantity of the substance was sufficient to produce the narcotic or chemical effect normally associated with such narcotics or drugs."

avenue should have been open and available to the appellant to show invalidity in the warrant.

It is anomalous for the majority to assert that it is the obligation and burden of the appellant to prove the illegality of the search and seizure and yet to approve the denial by the trial court of appellant's attempt to introduce evidence needed to carry its burden.

The majority supports its position by saying: "It is a well established principle that the party seeking to impeach a search warrant has the burden of establishing the matters complained of and that, if the warrant is regular on its face, it will be presumed that the magistrate properly discharged his duties in issuing it. United States v. Thompson, 421 F.2d 373 (5th Cir. 1970); State v. Yates, 449 P.2d 575 (Kan. 1969), *cert. denied*, 396 U.S. 996 (1969); State v. Kelly, 407 P.2d 95 (1965)." Yet it approves the trial court's decision to exclude the search warrant and its supporting affidavit from evidence, thus making it impossible to examine the warrant to determine if it is "regular on its face."

In spite of the error committed by the trial court. I believe it to be harmless. See NRS 178.598.[1]

Even if the appellant had been able to prove that the affidavit supporting the search warrant was insufficient, and as a consequence the search warrant was improperly issued, or that the search warrant was improperly served, it nevertheless had the obligation to move before trial to suppress the evidence. (NRS 179.085(3).) This the appellant failed to do. Therefore, it became discretionary with the trial court to refuse to hear appellant's motion to suppress made at the time of trial. In this phase of the proceeding I see no such abuse of discretion as would require us to reverse.

GUNDERSON, J., dissenting:

I agree with Mr. Justice Batjer's observation that the majority's legal position is "anomalous"; however, I cannot excuse anomalies in the district court's actions, as does Justice Batjer, by invoking the words "harmless error."

The majority say that "[t]o make reference to a document by its common designation is not a violation of the best evidence rule." Perhaps not, but it does not follow that such a reference conclusively proves such a document exists which was regular on its face. Personally, I believe alluding to a document as a

---

[1]NRS 178.598: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

"warrant" constitutes no evidence whatever that the "warrant" was regular on its face; however, all must agree that such a reference is not irrebuttable evidence, so strong as to foreclose an attempt to show the "warrant" was in fact irregular.

Thus, assuming appellant's Fourth Amendment rights were raised in timely fashion, the "warrant" manifestly was relevant to whether that document was regular on its face, and hence to whether respondent had the burden of attacking it. Furthermore, again assuming the Fourth Amendment issue was timely raised, and assuming further that the "warrant" was regular on its face and thus placed the burden of proof on appellant, the warrant and underlying affidavit still were competent evidence on the ultimate issue of legality. In short, whether appellant had the burden of proof seems unimportant here, for the court foreclosed appellant from demonstrating that the "warrant" was unlawfully issued, and thereby from discharging whatever burden appellant had.

As I see it, the sole issue is whether we properly may hold that appellant's counsel have forfeited their client's rights by failing to employ in this nonjury civil case a statute from our code of criminal procedure, which was primarily intended to avoid delays in the course of criminal jury trials. See: NRS 179.085. To me, such a Procrustean construction of NRS 179.-085 not only denies appellant procedural due process, but is totally unfair to appellant's counsel, for in effect it brands them as derelict, when in fact they were nothing of the sort.

I perceive no language in NRS 179.085 to place appellant's counsel on notice that they must seek a bifurcated trial on the search issue, by filing a motion to suppress. That statute does not apply to civil proceedings, either by its terms, by its policy, or by necessary implication.

NRS 179.085 is included in the Nevada Revised Statutes as part of Title 14, which is headed in bold, capital letters: "PROCEDURE IN CRIMINAL CASES." It was enacted in 1967 as part of a lengthy Act summarized as: "AN ACT to regulate proceedings *in criminal cases* in this state; . . ." Nev. Stats. 1967, ch. 523; emphasis added. That Act provided, inter alia: "This Title may be known and cited as the *Nevada Criminal Procedure Law.*" Sec. 2; emphasis added. Said Act next declared: "This Title governs the procedure in the courts of the State of Nevada and before magistrates *in all criminal proceedings,* . . ." Sec. 3; emphasis added. The Act provided further: "This Title is intended to provide for the just determination *of every criminal proceeding.* . . ." Sec. 4; emphasis added. Said Act is almost 100 pages in length, contains 468

sections, and countless sub-sections. So far as appears none, including the one the majority invoke here, have application to anything other than the processing of criminal accusations.

There is, of course, nothing to prevent us from declaring motions to suppress requisite in civil forfeiture proceedings, although in such cases the procedure seems nonutilitarian if not counterproductive. However, if we are to make motions to suppress part of Nevada's civil procedure, let us do so prospectively so that, having notice of this requirement, litigants will enjoy procedural due process, and their lawyers will not be branded as negligent for failure to use criminal statutes imported into the civil law by this court on an *ad hoc* basis.