662 P.2d 1024

Johnny M. WORD, a single man, Plaintiff/Appellant,

v.

MOTOROLA, INC., a Delaware corporation, Defendant/Appellee.

No. 16240–PR.

Supreme Court of Arizona, En Banc.

April 1, 1983.

Bentley, Brandes & Brandes·by Richard N. Brandes, Phoenix, for plaintiff/appellant.

Andrews, Marenda & Moseley by Dale E. Marenda, Phoenix, Michael D. Mercier, Tempe, for defendant/appellee.

FELDMAN, Justice.

Plaintiff was assigned by his employer, Paramount Designs Systems, Inc. (Paramount) to work at Motorola, Inc. (defendant). During the course of this employment, plaintiff was injured on defendant's premises. He filed a workmen's compensation claim against Paramount and received benefits from its carrier. He then filed a negligence action against defendant. Defendant claimed it was plaintiff's employer and that workmen's compensation was plaintiff's exclusive remedy. The trial court granted defendant's motion for summary judgment on this issue and the court of appeals affirmed. *Word v. Motorola, Inc.,* 135 Ariz. 527, 662 P.2d 1031 (App. 1982). We accepted review in order to settle the law on remote employers and to resolve the conflict between divisions of the court of appeals. *See Young v. Environmental Air Products,* 136 Ariz. ——, 665

P.2d 40 (1983) (No. 16216, decided this date). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Ariz.R.Civ. App.P. 23, 17A A.R.S.

The facts necessary for this opinion are as follows. Paramount was plaintiff's direct employer. It was under contract to supply laborers to defendant. Pursuant to that contract, Paramount assigned plaintiff to work for defendant and plaintiff was accepted by defendant's foreman. The foreman assigned plaintiff to assist a sheet metal worker, Ira Abel, who was a direct employee of defendant. Plaintiff and Abel were engaged in performance of remodeling work which involved a portion of defendant's plant. They worked under direct supervision of defendant's employees. Defendant was using its own supervisory help and many of its own workers, plus additional workers furnished by labor contractors such as Paramount. No general contractor was employed.

Paramount was not responsible for performance of the construction work, and did not participate in it. Its one function was to furnish temporary laborers, such as plaintiff, at defendant's request and subject to defendant's right to accept or terminate such laborers. However, plaintiff remained on Paramount's payroll, was covered by Paramount's workmen's compensation coverage, and remained an employee of Paramount.

Plaintiff was injured by a malfunction of a lifting device owned and supplied by defendant. Plaintiff applied for and received workmen's compensation benefits from Paramount's carrier. He then filed an action against defendant,[1] alleging it had been negligent in providing him with defective equipment. Defendant answered and as an affirmative defense claimed it was immune from common law action because it was plaintiff's "employer" by operation of law. The defense is based on A.R.S. § 23–902(B), which reads as follows:

When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractors and the persons employed by him, and his sub-contractor and persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer.

■ The "statutory employer" defense assumes that if an employer is liable for compensation to remote employees, it is entitled as a *quid pro quo* to the tort immunity which is extended to "employers" by other sections[2] of the Workmen's Compensation Act. 2A A. Larson, *Workmen's Compensation Law,* § 72.31, at 14–112 (1982).[3] The trial court granted summary judgment for defendant on the statutory employer issue. Plaintiff appealed and argued that two elements are required for application of the statutory employer concept. Conceding that the element of retained control was present, plaintiff urged that the work in question was not "part or process" of defendant's business as required by A.R.S. § 23–902(B). The court of appeals concluded that plaintiff's work was "part of the ordinary and regular duties of Motorola personnel" and therefore "part or process" of defendant's business. This is the correct test to apply in a statutory employer case. *Young v. Environmental Air Products, supra.*

Finding that the uncontroverted facts established the "part or process" element, the court of appeals affirmed the trial court's summary judgment on the statutory employer issue. However, shortly before the opinion was announced, Division Two of the Court of Appeals issued its opinion in *Young,* holding that the statutory employer doctrine could not be applied to destroy an employee's common law right of action against a remote employer, absent a showing that the employee consented to the em-

---

1.  A.R.S. § 23–1023 permits the filing of a so-called "third-party" action against a tortfeasor other than the employer or a co-employee.

2.  *See* A.R.S. §§ 23–906 and 23–1022.

3.  Since neither party has raised the issue, we do not reach the validity of that assumption where, as here, benefits have been paid by the direct employer. See, however, *Young v. Environmental Air Products, supra,* 136 Ariz. at 162 nn. 5 & 6, 665 P.2d 40 nn. 5 & 6.

ployment relationship with the remote employer. On motion for rehearing in the court of appeals, plaintiff therefore raised the *Young* holding as grounds upon which the court should reconsider its opinion. The court declined to do so, and we accepted jurisdiction.

■ In *Young v. Environmental Air Products, supra,* we hold today that consent of the employee is not a necessary element for application of the statutory employer doctrine. We pointed out, too, that the consent requirement imposed by the court of appeals in *Young* and by such cases as *Novenson v. Spokane Culvert & Fabricating Co.,* 91 Wash.2d 550, 588 P.2d 1174 (1979), is the majority rule applied to lent employee situations. If, therefore, the case at bench raises a statutory employee issue under A.R.S. § 23–902(B), the court of appeals was correct in failing or refusing to consider the issue of consent. We find, however, that the decisions in the trial court and court of appeals were based on a doctrine legally inapplicable to the facts of this case.

The statutory employer doctrine governs only situations in which an "employer [owner or general contractor, for example] procures work to be done for him by a contractor ...." A.R.S. § 23–902(B). Here, Motorola did not procure work to be done by Paramount. It undertook to perform the work itself, through its employees, and procured plaintiff and additional temporary employees from Paramount and other labor contractors. Paramount did not "do work" for Motorola, it merely supplied ("lent") its employees to Motorola. The issue in this case, therefore, was not whether Motorola was a statutory employer under § 23–902(B), but whether Motorola was actually plaintiff's employer under the lent employee doctrine. *See Carnes v. Industrial Commission,* 73 Ariz. 264, 240 P.2d 536 (1952).

As indicated above and in *Young v. Environmental Air Products, supra,* the require-ment of consent seems to be uniformly applied in lent employee cases.[4] The rationale for requiring a contractual relationship between the lent employee and the "special" employer is described by Larson as follows:

> Although the lent-servant doctrine is a familiar one at common law, ... [i]t is necessary to stress once more that the workmen's compensation lent-employee problem is different in one significant respect: There can be no compensation liability in the absence of a contract of hire between the employee and the borrowing employer [citing *Casson v. Industrial Commission,* 24 Ariz.App. 385, 539 P.2d 189 (1975)] ... In compensation law, the spotlight must now be turned upon the employee, for the first question of all is: Did he make a contract of hire with the special employer? ...
>
> This must necessarily be so, *since the employee loses certain rights along with those he gains when he strikes up a new employment relation. Most important of all, he loses the right to sue the special employer at common law for negligence; and when the question has been presented in this form, the courts have usually been vigilant in insisting upon a showing of a deliberate and informed consent by the employee before [the] employment relation will be held a bar to common law suit.*
>
> . . . .
>
> What gives the lent-employee cases their special character, however, is the fact that they begin, not with an unknown relation, but with an existing employment relation. The conflict of interest becomes one not between employer and employee (who is assured of recovering from someone) but between two employers and their insurance carriers. There is here no place for presumptions [of employment status and consequent workmen's compensation coverage] based

---

4. The consent required to establish an employment relationship between the special employer and the employee need not be express. It "may be implied from the employee's acceptance of the special employer's control and direction." 1C Larson, *supra* § 48.10, at 8–331 to –332; *Gaudet v. Exxon Corp.,* 562 F.2d 351 (5th Cir.1977). On the other hand, "what seems on the surface to be such acceptance may actually be only a continued obedience to the general employer's commands." 1C Larson, *supra* § 48.10 at 8–332 to –333.

on the beneficient purposes of the act. The only presumption is the continuance of the general employment, which is taken for granted as the beginning point of any lent-employee problem. To overcome this presumption, it is not unreasonable to insist upon a clear demonstration that a new temporary employer has been substituted for the old, which demonstration should include a showing that a contract was made between the special employer and the employee . . . .

1C Larson, *supra* § 48.10 (emphasis supplied).

■ The factors to be considered in determining when a lent employee has become the employee of the special employer are set out in Larson. We quote them with approval:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
>
> (a) the employee has made a contract of hire, express or implied, with the special employer;
>
> (b) the work being done is essentially that of the special employer; and
>
> (c) the special employer has the right to control the details of the work.
>
> When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

1C Larson, *supra* § 48.00; *see also Carnes v. Industrial Commission, supra.*

When these factors are met, the "special employer" becomes an "employer" and, like other employers liable for workmen's compensation, may be entitled to the benefit of the statutory immunity given complying employers.[5]

■ We conclude, therefore, that this case was incorrectly decided. This conclusion is not based upon the consent issue raised at rehearing in the court of appeals, but, rather, on our finding that the legal

theory applied by the trial court and the court of appeals is not relevant to the facts. "It is clear that the statutory employee type of immunity does not apply if the true relationship is that of lent employee." 2A Larson, *supra* § 72.31(c) at 14–140. The judgment below was not granted on the lent employee doctrine, but, rather, upon the statutory employer theory, an affirmative defense which must be raised and *established* by the defendant. *See Livingston v. Citizens Utility, Inc.,* 107 Ariz. 62, 481 P.2d 855 (1971); *Basurto v. Utah Construction & Mining Co.,* 15 Ariz.App. 35, 485 P.2d 859 (1971). Defendant raised the defense and plaintiff claimed from the beginning that the defense was inapplicable, albeit for the wrong reason.

■ Although the parties here argued the case under the statutory employer doctrine and did not raise the lent employee issue on appeal, we are not precluded from raising the error on review. "Parties cannot stipulate as to the law applicable to a given state of facts and bind the court." *State Consolidated Publishing Company v. Hill,* 39 Ariz. 163, 167, 4 P.2d 668, 669 (1931). Furthermore, this is an error going to the foundation of the action which may be noticed and reviewed on appeal whether or not it was assigned. *Id.; Wagner v. Coronet Hotel,* 10 Ariz.App. 296, 300, 458 P.2d 390, 394 (1969).

We hold, therefore, that the trial court erred in granting summary judgment on the statutory employer issue. The judgment is reversed, the opinion of the court of appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

---

5. In cases specifically involving labor contractors, the usual rule is that "employers obtaining workers from the kind of labor service typified by Manpower, Inc. have usually, but not invariably, been held to assume the status of special employer." 1C Larson, *supra* § 48.-23, at 8–377. However, there is substantial authority to the contrary. 1C Larson, *supra* § 48.23, at 8–373 n. 65.1.; *Novenson v. Spokane Culvert & Fabricating Co., supra.*