142 Nev., Advance Opinion 27

IN THE SUPREME COURT OF THE STATE OF NEVADA

WACEY JOHN CHABOT,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 89243

FILED

APR 09 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to jury verdict, of attempted murder with the use of deadly weapon, domestic battery with the use of a deadly weapon resulting in substantial bodily harm, and battery with the use of a deadly weapon. Second Judicial District Court, Washoe County; Scott N. Freeman, Judge.

*Affirmed.*

Richard F. Cornell, P.C., and Richard F. Cornell, Reno,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Amanda Sage, Appellate Deputy District Attorney, Washoe County,
for Respondent.

BEFORE THE SUPREME COURT, PARRAGUIRRE, BELL, and STIGLICH, JJ.

## OPINION

By the Court, STIGLICH, J.:

A defendant is entitled to a self-defense jury instruction "so long as there is some evidence, no matter how weak or incredible," to support that theory of the defense. *Williams v. State*, 99 Nev. 530, 531, 665 P.2d 260, 261 (1983). Where the defendant asserts that the alleged crime was committed in self-defense, the defendant may call into question the character of the victim. *Coombs v. State*, 91 Nev. 489, 490, 538 P.2d 162, 162 (1975). The victim's character may be shown by evidence of a victim's specific bad acts if the defendant personally knew of those prior acts at the time of the incident. *State v. Sella*, 41 Nev. 113, 138, 168 P. 278, 286 (1917). Such evidence is probative of the defendant's state of mind and the reasonableness of their need to defend themself. *Daniel v. State*, 119 Nev. 498, 516, 78 P.3d 890, 902 (2003).

Appellant Wacey Chabot was convicted of attempted murder and domestic battery with the use of a deadly weapon resulting in substantial bodily harm for shooting his ex-fiancée, Vanessa Aldrich, and of battery with the use of a deadly weapon against his landlord Alejandro Martines. Chabot argued that he acted in self-defense. Although the district court instructed the jury on self-defense, the court prevented Chabot from cross-examining Aldrich about two instances where Aldrich had stabbed Chabot. The district court also excluded evidence of text messages between Chabot, Aldrich, and Martines that Chabot alleged corroborated those prior stabbings. Chabot was entitled to present evidence of Aldrich's specific bad acts, and the district court therefore erred in preventing him from doing so. Nevertheless, we conclude that this error was harmless in light of the overwhelming evidence of guilt. We also conclude that Chabot's other arguments lack merit. We therefore affirm Chabot's convictions.



## FACTS AND PROCEDURAL HISTORY

Alejandro Martines lived in a trailer on a commercial lot in Sparks, Nevada. Vanessa Aldrich, Martines's close friend and longtime employee, lived in a different trailer on the same lot. For over a year, Aldrich's ex-fiancé Wacey Chabot lived in Aldrich's trailer with her. Although Aldrich and Chabot had dated on and off for approximately six years, they had recently broken up at the time of the incident, and Chabot was in the process of moving out.

At trial, Chabot declined to testify, and therefore, we glean the facts regarding the incident from Aldrich's and Martines's testimony. One morning, Chabot asked Martines if he could temporarily stay in Martines's trailer. Martines agreed and left to visit his girlfriend. Aldrich met Martines at his girlfriend's home later that afternoon. When Chabot learned that Aldrich had joined Martines, he called Martines multiple times and sent several text messages asking when they would return so he could finish moving out of Aldrich's trailer. When Martines and Aldrich returned, the door to Martines's trailer was open, and Martines and Aldrich assumed that Chabot was inside. As they entered, Martines sat down to rest while Aldrich looked for Chabot. Moments later, Chabot entered the trailer and locked the door behind him. An altercation ensued. Aldrich was shot in the head, and Martines was hit on the head with a gun multiple times. Martines escaped the trailer and called 911 at a nearby gas station.

Responding police observed that Chabot had blood on his neck and rib cage, a deep gash on his forearm, and other injuries. Inside the trailer, officers found Aldrich lying on her back, surrounded by a pool of blood. Officers also found a kitchen knife with visible blood stains. DNA testing revealed that the knife had genetic material from all three individuals on the handle, though only Chabot's blood was found on the

Supreme Court
of
Nevada

(O) 1947A

3

blade. After Chabot was treated at a hospital for his injuries, he was interviewed by police, where he made incriminating admissions.

Chabot's theory of defense was that Aldrich and Martines were the initial aggressors and that he acted in self-defense. Chabot emphasized the wounds on his neck and his forearm, which he asserted occurred during the altercation. To show self-defense, Chabot moved to introduce evidence of Aldrich's previous violent acts against Chabot to show his state of mind when he shot her. Specifically, Chabot wanted to introduce evidence that Aldrich had stabbed him twice when they were dating. One incident happened several years earlier, when Aldrich allegedly stabbed Chabot underneath the ribs during an argument. Aldrich also allegedly stabbed Chabot in the hand the day before the shooting.[1] To establish that Aldrich stabbed him, Chabot proffered text messages from Aldrich to him and Martines, who drove Chabot to the hospital. Chabot did not attach the text messages to the motion, but he did partially transcribe the texts. He also offered to prove the first stabbing by showing the scar on his stomach and with medical records.

In a pretrial hearing, the district court denied Chabot's motion to admit the evidence. The court ruled that evidence of the second stabbing could only come in if a foundation was laid and cast doubt that it would admit evidence of the first stabbing even with the proper foundation. The court ruled that such evidence was inadmissible as to Chabot's state of mind. The court did not explain what foundation was required. During trial, Chabot again attempted to introduce evidence about the second stabbing, and the court again denied its admission. Notwithstanding these

---

[1]Notably, this wound is different from the gash on Chabot's forearm.

adverse rulings, Chabot presented his self-defense theory to the jury,[2] and the court instructed the jury on self-defense. After a four-day trial, the jury found Chabot guilty on all counts.

## DISCUSSION

On appeal, Chabot raises three main arguments.[3] First, Chabot argues that the district court should have allowed him to introduce evidence of the second stabbing. Second, Chabot claims that the district court should have ruled his police interview involuntary and suppressed it. Third, Chabot argues that the district court should have instructed the jury that the gun discharged accidentally. We address each contention in turn.

*The district court should have allowed Chabot to introduce evidence of the second stabbing*

Chabot argues that the district court should have admitted evidence of the second stabbing. We agree.

Generally, a party may not introduce evidence of a person's character to show that they acted in conformity with their character.[4] NRS 48.045. Despite this general prohibition, character evidence is admissible

---

[2]In his opening statement, Chabot informed the jury that they would hear "conclusive testimony about who [Chabot] was defending himself from." Chabot then suggested in closing that Aldrich was "perhaps charging [Chabot] with" the kitchen knife when he shot her.

[3]Chabot also argues that the district court should have instructed the jury on attempted voluntary manslaughter. "[A]ttempted voluntary manslaughter does not exist in Nevada," however, and the district court was not required to instruct the jury on it as a lesser-included offense. *Curry v. State*, 106 Nev. 317, 320, 792 P.2d 396, 397-98 (1990) (citation modified).

[4]Chabot argues for the first time on appeal that the court should have admitted the evidence under either NRS 48.035(3) or NRS 48.061. Chabot failed to raise these arguments below and therefore waived them. *See Gonzales v. State*, 137 Nev. 398, 406 n.2, 492 P.3d 556, 564 n.2 (2021).

in certain circumstances. In one, the accused may offer evidence of a crime victim's character. NRS 48.045(1)(b) (providing further that the procedural requirements of NRS 48.069 may apply). That "exception permits a defendant to present evidence of a victim's character when it tends to prove that the victim was the likely aggressor." *Daniel v. State*, 119 Nev. 498, 514, 78 P.3d 890, 901 (2003). When invoked, evidence is generally limited to opinion testimony about the victim's reputation. *Id.* (discussing NRS 48.055). Specific acts can generally be used only to cross-examine a witness who testifies to an opinion of the victim's reputation. *Id.*

We allow a defendant to present a victim's specific acts of violence in limited circumstances. Specific violent acts by the victim may be introduced to show the defendant's state of mind at the time of the offense, provided that the defendant knew of those specific acts. *Id.* at 515, 78 P.3d at 902; *Burgeon v. State*, 102 Nev. 43, 45-46, 714 P.2d 576, 578 (1986). A defendant who knows of the victim's previous violent acts may introduce evidence of them to show that the defendant was afraid of the victim and to corroborate the reasonableness of the defendant's belief in the need to use force in self-defense. *Burgeon*, 102 Nev. at 45-46, 714 P.2d at 578. Such evidence may be admitted "through the defendant's own testimony, through cross-examination of a surviving victim, and through extrinsic proof." *Daniel*, 119 Nev. at 516, 78 P.3d at 902.

A closer inspection of *Daniel* is particularly instructive as to what a defendant must do to introduce evidence of a victim's specific violent acts. There, defendant Dorion Daniel was convicted of two murders and other offenses. 119 Nev. at 504, 78 P.3d at 894. Part of Daniel's theory of defense was that he acted in self-defense. *Id.* at 506, 78 P.3d at 895. During trial, Daniel supported his self-defense case by testifying that the victims had a reputation for violence and as to several of the victims' prior specific

violent acts. *Id.* at 506, 78 P.3d at 895-96. The district court permitted Daniel to question other witnesses about "their opinion as to the victims' violent character" but did not permit Daniel to introduce extrinsic evidence of the victims' specific acts. *Id.* at 513, 78 P.3d at 900. We held that the district court erred in not permitting Daniel to proffer extrinsic evidence of the victims' specific bad acts known to him at the time of the incident. *Id.* at 515-16, 78 P.3d at 902. *Daniel* did not hold that a defendant had to testify to subjective fear before extrinsic evidence of the victim's prior specific acts of violence could come in. The salient inquiry is whether the defendant knew of those specific violent acts when the charged incident occurred. *Cf.* NRS 200.130 (providing that a killing may be justified if the defendant is reasonably and actually afraid for their life). Thus, a defendant asserting self-defense may introduce extrinsic evidence of the victim's specific acts of violence previously known to the defendant without testifying that he was afraid.

We thus discern that the district court twice abused its discretion. *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008) (reviewing a district court's evidentiary decisions for abuse of discretion). First, the district court abused its discretion in finding that there was insufficient foundation for Chabot to cross-examine Aldrich about her prior specific acts of violence.[5] Chabot necessarily knew of Aldrich's previous violent acts when the instant altercation occurred, as he was the one who had been stabbed. Aldrich's acts were probative of Chabot's theory of self-defense. Even though it found sufficient basis to instruct the jury on self-

---

[5]In light of *Daniel*, the district court also erred in ruling categorically that Aldrich's specific bad acts were not admissible to show Chabot's state of mind. *See* 119 Nev. at 515, 78 P.3d at 902.

defense, the court denied Chabot the opportunity to cross-examine Aldrich about the second stabbing and thus erred.

Second, the district court erred in excluding the texts between Aldrich, Martines, and Chabot discussing the second stabbing. While the evidence as presented at trial did not provide adequate foundation for Chabot to admit those text messages, Chabot could have authenticated them by asking Aldrich or Martines about them. *See Talley v. State*, 141 Nev., Adv. Op. 61, 580 P.3d 101, 108 (2025) ("A text message may be authenticated . . . through the testimony of a witness with personal knowledge, such as the sender, [among other ways]."). The district court precluded Chabot from providing that foundation. We conclude that the district court abused its discretion in precluding evidence of the text messages.

*Excluding evidence of the second stabbing was harmless*

The district court's errors in excluding evidence of Chabot being stabbed by Aldrich were harmless considering the overwhelming evidence of Chabot's guilt. Nonconstitutional errors like errors admitting or excluding evidence are "deemed harmless unless it had a substantial and injurious effect or influence in determining the jury's verdict." *Newman v. State*, 129 Nev. 222, 236, 298 P.3d 1171, 1181 (2013) (citation modified). An erroneous exclusion of evidence does not warrant relief if "it is apparent that a conviction would have resulted even if the error had not been committed." *Sanders v. State*, 96 Nev. 341, 344, 609 P.2d 324, 326 (1980).

It was uncontested that Chabot attacked both Martines and Aldrich; the only question was whether Chabot acted in self-defense. To that end, the State introduced evidence that Chabot arrived at the property early and disabled the security cameras. Chabot then lured Martines and Aldrich back to the trailer through incessant texts and phone calls. When

they arrived and entered the trailer, they did not see Chabot. While Aldrich was searching for Chabot in the rear of the trailer, he entered from outside. Chabot then locked the door, pulled out a gun, said "[a]ll three of us are going to die tonight," and initiated an altercation. In particular, Martines testified that Chabot was the initial aggressor and that Chabot beat him in the head with the firearm and shot Aldrich in the face unprovoked.

In contrast, Chabot's theory of self-defense relied on attenuated inferences. In closing, he argued that his blood on a knife and the fact of his injuries indicated that he had been attacked first. He also contended that Aldrich's body position after she was shot suggested that she was physically closer to Chabot at the time he pulled the trigger than Martines's testimony indicated. Although Chabot met the low standard necessary to introduce evidence of Aldrich's previous specific acts, admission of those acts would not have substantially strengthened Chabot's theory. We therefore cannot say that excluding this evidence had a "substantial or injurious effect" on the jury and decline to overturn Chabot's convictions on these grounds.

*Chabot failed to show reversible error in the court's denial of the motion to suppress*

Chabot next argues that the district court erred in denying a motion to suppress his police interview.[6] The State, however, did not introduce the police interview at trial. Chabot argues that because the police interview *could* have come in, he decided not to testify at trial.

---

[6]For the first time on appeal, Chabot also claims that his arrest was illegal. As Chabot did not preserve his rights on this issue, we decline to exercise our discretion to review this claim. *See Somee v. State*, 124 Nev. 434, 443, 187 P.3d 152, 159 (2008) (noting this court has discretion to review constitutional error).

SUPREME COURT
OF
NEVADA

(O) 1947A

9

Chabot does not articulate why the police interview affected his ability to testify, nor does he explain how his testimony would have changed the jury's verdict. Accordingly, we decline to address this argument. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument."). Moreover, even if the district court erred in its ruling on the motion to suppress, we are satisfied that "the error did not contribute to the verdict" and was thus harmless. *Belcher v. State*, 136 Nev. 261, 267, 464 P.3d 1013, 1023 (2020).

*A jury instruction on accidental discharge was not warranted*

Finally, Chabot contends that the district court should have instructed the jury that his shooting of Aldrich was accidental. The district court found that "there was not even a scintilla of accident in this case, even by implication," and refused to issue that instruction.

We review a district court's decision "not to issue a particular jury instruction for an abuse of discretion." *Ouanbengboune v. State*, 125 Nev. 763, 774, 220 P.3d 1122, 1129 (2009). A defendant may receive a jury instruction "if it finds support in the evidence." *Id.* (citation modified).

We hold that the district court did not abuse its discretion in refusing to give this instruction. At trial and on appeal, Chabot did not and does not identify any evidence supporting the conclusion that the gun discharged accidentally. Although Chabot is correct that what occurred in the trailer is factually disputed, a murky timeline does not alone support the theory that Chabot accidentally fired his gun. We conclude that relief is not merited in this regard.

## CONCLUSION

In *Daniel*, this court held that, if a defendant knew about a victim's specific violent acts at the time of the alleged attack, the defendant

was entitled to present evidence of those specific violent acts to show the defendant's state of mind. 119 Nev. at 515-16, 78 P.3d at 902. Such evidence may be presented "through the defendant's own testimony, through cross-examination of a surviving victim, and through extrinsic proof." *Id.* at 516, 78 P.3d at 902. We now clarify that a defendant may present such evidence of a victim's specific violent acts even when the defendant elects not to testify at trial. The district court here thus erred in preventing Chabot from presenting evidence of Aldrich's previous stabbings. Nevertheless, we conclude that this error was harmless in light of the overwhelming evidence of guilt. As Chabot's other arguments are unpersuasive, we affirm the judgment of conviction.

_____, J.
Stiglich

We concur:

_____, J.
Parraguirre

_____, J.
Bell