142 Nev., Advance Opinion 32

IN THE SUPREME COURT OF THE STATE OF NEVADA

JESCE PAUL RICHT,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 89254

**FILED**

APR 30 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict and a guilty plea, of murder with the use of a deadly weapon and possession of a firearm by a prohibited person. Second Judicial District Court, Washoe County; Connie J. Steinheimer, Judge.

*Affirmed.*

Evelyn Grosenick, Public Defender, and Kathryn Reynolds, Chief Deputy Public Defender, Washoe County,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Marilee Cate, Appellate Deputy District Attorney, Washoe County,
for Respondent.

---

BEFORE THE SUPREME COURT, PARRAGUIRRE, BELL, and STIGLICH, JJ.

SUPREME COURT
OF
NEVADA

(O) 1947A

26-19582

## OPINION

By the Court, BELL, J.:

To sufficiently lay a foundation for a defense of self-defense, a defendant must first offer "some evidence, no matter how weak or incredible," that the defendant acted in self-defense. *Williams v. State*, 99 Nev. 530, 531, 665 P.2d 260, 261 (1983). At that point, the defendant can bring in certain evidence regarding the character of the victim, and the burden of persuasion then rests with the State to disprove self-defense. This case presents us with the issue of whether a defendant can present the foundation for a self-defense theory premised solely on a victim's character. We hold that a defendant cannot, and so we affirm Richt's conviction on the count of murder with the use of a deadly weapon.

### FACTS AND PROCEDURAL HISTORY

Appellant Jesce Richt was convicted of murdering Jessica Griffin. For two decades, Richt and Griffin had engaged in an on-and-off, tumultuous relationship. The pair was out of contact for an extended time while Griffin was married to a different man, but after the dissolution of Griffin's marriage in 2022, Richt and Griffin rekindled their relationship.

The relationship remained rocky. A warrant to arrest Richt for domestic battery issued in January 2023, and Griffin obtained an extended protective order, although the order was never served on Richt. By April, the relationship had completely fractured. On April 10, eight days before her death, Griffin reported to law enforcement that Richt punched her in the face during a drive from Las Vegas to Reno. Griffin provided police with photographs of the injuries and an audio recording. The next day, officers arrested Richt on the outstanding domestic battery warrant from January. Richt was released on bail later that day.

Upon Richt's release, things went from bad to worse. Between April 11 and April 15, Richt called Griffin over 200 times, and Griffin called Richt almost 50 times. The two exchanged heated phone calls and text messages, several of which involved Richt asking Griffin to meet with him. In one recorded telephone exchange, Griffin warned Richt, "I have a gun." She later sent texts to Richt stating "You should be scared" and "If you come to my house, I will fucking kill you literally kill you" and other similar messages. Griffin refused to meet Richt in public and ultimately blocked Richt's phone number. During this time, Griffin borrowed her mother's gun and purchased her own gun on April 16.

The same day, Richt traveled to the Reno area from Las Vegas. Over the course of two days, Richt rented at least three different vehicles. Surveillance footage captured him in the different vehicles traveling to Griffin's work, her residence, and the home of Griffin's mother.

On April 18, the day of the murder, a surveillance camera recorded Richt in a rental car following Griffin to lunch. After Griffin returned to work, Richt drove through the parking lot of her workplace. Subsequently, Richt returned that vehicle and privately rented a black Honda Civic equipped with a GPS device. Location data from the GPS showed the Civic circling Griffin's workplace for nearly two hours. At the end of Griffin's workday, surveillance footage showed Richt following Griffin out of her work parking lot in the Civic. GPS data from the Civic showed Richt followed Griffin to her mother's residence. A neighbor noticed the Civic parked across the street at the same time Griffin pulled into the garage. Home surveillance video captured Richt running towards the residence and entering the garage. Just before approaching the garage, Richt pulled the hood off his sweatshirt and placed his hand on the right

side of his waist. The video did not capture the interior of the garage but captured audio of Griffin screaming. The audio also picked up gunfire. Seven gunshots were fired, all of which hit Griffin. Griffin died at the scene. No firearm was found in the garage.

Richt fled in the Civic immediately after the shooting. He left the rented Civic in the hotel parking lot where his own vehicle had been parked and retrieved his car. Richt also left without checking out of the hotel, leaving behind many personal items.

After Richt was identified from video footage, law enforcement executed a search of Richt's home in Las Vegas and recovered multiple firearms and ammunition that matched the casings found in Griffin's garage. A statewide search followed, and a few days later, Richt was apprehended in southern Nevada.

Richt was charged with first-degree murder with the use of a deadly weapon and possession of a firearm by a prohibited person. At trial, Richt, through counsel, did not dispute that he shot Griffin but maintained that he acted in self-defense, asserting Griffin threatened him, lured Richt to her mother's home, and was armed when he encountered her. No evidence was introduced in support of Richt's self-defense theory, and Richt did not testify. Ultimately, the jury returned a guilty verdict on the murder charge, and Richt entered a guilty plea to the firearm possession charge. The jury sentenced Richt to life without the possibility of parole on the murder charge. Richt appeals, challenging the murder conviction.

## DISCUSSION

On appeal, Richt raises three grounds for reversal. First, Richt contends the district court abused its discretion by excluding evidence in support of Richt's theory of self-defense in violation of Richt's due process rights. Second, Richt alleges the district court abused its discretion by

overruling an objection to the prosecution's presentation of electronic tracking information through a lay witness without proper authentication or foundation. Third, Richt claims the district court erred by omitting a portion of a proposed instruction advising the jury they would need to return and determine the punishment in the case of a conviction. Because Richt failed to establish the necessary foundation to support a theory of self-defense, failed to establish the inclusion of GPS testimony constituted plain error, and failed to establish abuse of discretion in the court's ruling on the jury instruction, we reject Richt's arguments and affirm the judgment of conviction.

*Richt failed to establish the district court violated his due process rights by excluding evidence supporting his theory of self-defense*

Richt contends the district court improperly excluded evidence of Griffin's threats, possession of firearms, and voicemails and messages to third parties, maintaining each piece of evidence supported his theory of self-defense. We review the district court's decision to exclude evidence for an abuse of discretion. *Means v. State*, 120 Nev. 1001, 1007-08, 103 P.3d 25, 29 (2004). While some of this evidence could be relevant to support a theory of self-defense, Richt failed to lay a proper foundation to support the admission of evidence pertaining to the victim's character and conduct.

*Richt was not permitted to lay the foundation for a self-defense claim solely through evidence of Griffin's character*

Under Nevada law, a homicide is justifiable in self-defense only when a person reasonably believes using force is necessary to prevent one's own death or serious bodily harm. NRS 200.120; NRS 200.200. Self-defense also requires that the person killed was the initial aggressor "or that the slayer had really, and in good faith, endeavored to decline any further struggle before the mortal blow was given." NRS 200.200(2).

 

Self-defense negates elements of the crime of murder. *Kelso v. State*, 95 Nev. 37, 42, 588 P.2d 1035, 1038-39 (1979). Justification for self-defense requires the defendant to introduce some evidence supporting the defendant's self-defense theory. *Williams*, 99 Nev. at 531, 665 P.2d at 261 (holding that a criminal defendant is entitled to present a self-defense theory "so long as there is some evidence, no matter how weak or incredible, to support it"). Once the defendant introduces sufficient foundational evidence to support a self-defense theory, the burden shifts to the prosecution to disprove self-defense beyond a reasonable doubt. *Runion v. State*, 116 Nev. 1041, 1052, 13 P.3d 52, 59 (2000).

A defendant can bolster their self-defense claim by introducing evidence of a victim's character. *Burgeon v. State*, 102 Nev. 43, 45, 714 P.2d 576, 578 (1986). We recently considered the admissibility of evidence of a victim's violent character in *Chabot v. State*, 142 Nev., Adv. Op. 27, ___ P.3d ___ (Apr. 9, 2026). There, we detailed the two means by which a defendant can introduce evidence of a victim's character. First, a defendant can introduce reputation testimony of a victim's violent character to show that the victim acted in line with their violent character and was thus the initial aggressor. NRS 48.045(1)(b); NRS 48.055(1). Second, a defendant can introduce evidence of a victim's specific acts that the defendant knew about at the time of the altercation to show the defendant's state of mind. *Daniel v. State*, 119 Nev. 498, 515, 78 P.3d 890, 902 (2003).

In *Chabot*, we held that when a defendant has presented sufficient evidence of a self-defense claim, the defendant is then permitted to introduce evidence of a victim's specific acts without testifying—provided, of course, that the defendant knew about the specific acts at the time of the altercation. 142 Nev., Adv. Op. 27, ___ P.3d at ___. This case presents a

Supreme Court
of
Nevada

(O) 1947A

6

different issue. Here, Richt wants to use evidence of a victim's specific acts to lay the foundation for a self-defense claim. In the context of a victim's propensity for violence, we have held that "[t]he character of the deceased can only be brought in issue where the circumstances are such as to raise a doubt whether the homicide was committed in malice or was prompted by the instinct of self-preservation." *State v. Pearce*, 15 Nev. 188, 191 (1880). In other words, a defendant has to show evidence of self-defense before the victim's character can be introduced. In line with *Pearce*, we hold that evidence of a victim's specific violent acts cannot provide the foundation for a self-defense claim and can only be introduced once the defendant has laid a foundation for a self-defense claim. *Cf. State v. Arabie*, 496 So. 2d 554, 558 (La. Ct. App. 1986) ("The law does not permit an individual to track down his enemy, shoot [her] with a pistol, and then claim justification for the homicide because of prior threats.").

> *Richt's need to testify to lay the foundation did not violate his constitutional right to remain silent*

While the victim's character may not provide foundational evidence for a defendant to claim self-defense, the evidence required to lay a foundation may otherwise take any form. The evidence may be admitted, including but not limited to, as part of the prosecution's case-in-chief, as part of cross-examination of witnesses, through demonstrative or documentary evidence, or through reasonable inferences drawn from admitted evidence. The amount of evidence required to meet this threshold is low. Even so, sometimes the only evidence that exists to make the foundational showing for self-defense may be the defendant's own testimony. This does not, as Richt suggests, create a constitutional conflict.

The Fifth Amendment of the United States Constitution affords a defendant the right to remain silent and prohibits the government from

compelling self-incrimination. *See also* Nev. Const. art. 1, § 8(1). But the right to remain silent does not shield a defendant from the natural consequences of choosing not to testify. *See United States v. Libby*, 475 F. Supp. 2d 73, 93 (D.D.C. 2007). These consequences—such as being unable to establish a foundation for self-defense—do not impose an unconstitutional penalty but rather reflect the reality that certain evidence may only come from the defendant's own testimony, particularly in cases where the defense hinges on the defendant's perception of events not corroborated by other evidence.

In this case, the home surveillance video and the eyewitness testimony of the neighbor presented at trial failed to provide any support for the idea that Griffin was the initial aggressor or that Richt faced imminent peril. Richt followed Griffin to her mother's house, and audio captured no conversation—just Griffin screaming and Richt shooting. Here, Richt was likely the only witness able to explain his perception to the contrary. Because Richt was unable to point to any admitted evidence to suggest that Griffin was the aggressor, Richt had no basis to admit Griffin's text messages and voicemails and information about her gun ownership.

*Richt's proffered evidence was otherwise inadmissible*

Each piece of evidence Richt attempted to introduce also needed to meet the threshold of relevance and comply with the rules of evidence to be admitted. *Brown v. State*, 107 Nev. 164, 167, 807 P.2d 1379, 1381 (1991). "Evidence to be admissible must be relevant to the case at bar." *Burton v. State*, 84 Nev. 191, 194, 437 P.2d 861, 863 (1968). Evidence that is not relevant is not admissible. *Rodriguez v. State*, 128 Nev. 155, 160, 273 P.3d 845, 848 (2012) (citing NRS 48.025(2)). The federal and state constitutions do not afford criminal defendants the right to present evidence that is

SUPREME COURT
OF
NEVADA

(O) 1947A

neither relevant nor material to their defense. *Brown v. State*, 138 Nev. 464, 476, 512 P.3d 269, 280 (2022).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015. This is a low threshold, and relevant evidence needs only to advance the ball ever so slightly. Even so, relevant evidence may be excluded if, among other things, "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury." NRS 48.035(1). Here, because Richt did not make the required foundation for a defense of self-defense, the evidence regarding the text messages, gun ownership, and other communications lacked relevance.

*Text messages*

Richt argues the district court erroneously excluded multiple text messages sent by Griffin threatening Richt. At trial, Richt sought to admit Griffin's texts through a law enforcement officer. The court sustained the State's objection and excluded the texts on relevance and hearsay grounds; however, the court left an opportunity for Richt to establish relevance later in the trial. In addition to the relevance problem created by a lack of foundational evidence to support a claim of self-defense, Richt asserts the messages did not constitute hearsay because they were presented to show their effect on him.

"Among many admissibility questions, a court must first determine the authenticity of a proposed piece of evidence and then proceed to assess other evidentiary concerns, such as relevance . . . ." *Talley v. State*, 141 Nev., Adv. Op. 61, 580 P.3d 101, 108 (2025) (explaining text messages may be authenticated either through the testimony of a witness with personal knowledge or circumstantial evidence to establish the sender's

Supreme Court
OF
Nevada

(O) 1947A

9

identity). Here, Richt would had to have first established a sufficient foundation authenticating the texts were sent by Griffin, but the district court excluded the messages on relevance grounds before Richt had an opportunity to make that showing. Nonetheless, absent direct testimony that Richt received those messages or testimony from any other individual who witnessed Richt's reaction to receiving those messages, the district court properly found the messages were irrelevant. Evidence must have some tendency to make a fact of consequence more or less probable. *See* NRS 48.015. Without evidence connecting Griffin's texts to Richt's state of mind, those messages do not make it any more or less probable that Richt acted in self-defense.

For the first time on appeal, Richt avers the messages were admissible nonhearsay because they were offered to show the "effect on the listener." "A statement merely offered to show that the statement was made and the listener was affected by the statement, and which is not offered to show the truth of the matter asserted, is admissible as non-hearsay." *Wallach v. State*, 106 Nev. 470, 473, 796 P.2d 224, 227 (1990); *see* NRS 51.035. Here, even assuming all of the elements of the test were met and the issue had been properly preserved at trial, the messages were inadmissible hearsay because the testifying officer had no personal knowledge of Richt's reaction to the texts, rendering the "effect on the listener" exception to hearsay inapplicable. Consequently, we conclude the district court properly exercised its discretion to exclude the messages.

*Gun ownership*

Richt sought to admit evidence of Griffin's ownership and possession of firearms. In addition to the lack of relevance because of his failure to produce any evidence of self-defense, Richt failed to offer any evidence to establish that Griffin was in possession of a firearm when she

 

pulled into her garage. Mere ownership or access to firearms alone does not necessarily support an inference that Griffin was armed during their encounter. *See Traylor v. State*, 627 S.E.2d 594, 597 (Ga. 2006) (stating that the fact that the victim "may have owned or carried a handgun prior to the fatal shooting does not tend to prove that he had a handgun on his person and intended to use it against" the defendant). Under the circumstances presented here, without any evidence that Griffin had a gun at the time of the shooting, the proposed evidence lacked probative value. For that reason, we conclude the district court properly excluded evidence of Griffin's firearms.

*Voicemail and conversations*

Richt also attempted to admit evidence demonstrating Griffin's state of mind prior to her death. According to Richt, Griffin intended to purchase a gun and coerce Richt to travel to Reno, expressing this plan to Griffin's mother in texts and in a similar voicemail left with a victim advocate at the Reno Police Department. Richt concedes that, at the time of the shooting, he was unaware of the communications sent between Griffin and Griffin's mother or between Griffin and the Reno Police Department.

In a self-defense claim, the focus is on whether the defendant reasonably believed the use of force was necessary. *See Runion*, 116 Nev. at 1046, 13 P.3d at 55. Griffin's intentions offered no probative value unless Richt was aware of them. In addition to failing to establish a foundation for introducing evidence of Griffin's state of mind, Richt failed to offer any admissible evidence connecting Griffin's communications to his own state of mind. The communications were irrelevant to whether Richt acted under a reasonable fear of immediate harm. As a result, we conclude the district court properly excluded the evidence related to Griffin's state of mind.



Richt's challenges to the district court's evidentiary rulings fail because none of the proffered evidence—Griffin's direct threats, possession of firearms, and her state of mind—was supported by a proper foundation for a theory of self-defense. Without that threshold showing, the district court had no basis to admit those pieces of evidence. Additionally, each piece of evidence faced an independent bar to admissibility.

The district court appropriately preserved Richt's ability to revisit each evidentiary issue had a proper foundation later been laid, but Richt failed to do so. Absent Richt's testimony, or any alternative evidentiary support, the defense failed to establish a sufficient nexus between the proffered evidence and Richt's claim of self-defense. Ultimately, we conclude the district court did not abuse its discretion and violate Richt's due process right to present his theory of defense.

*Lay testimony regarding the GPS tracker was properly admitted*

Richt asserts the district court erred by permitting a lay witness to testify to the accuracy of a GPS tracker installed on Richt's rental vehicle. At trial, Richt objected, but only on the grounds that the prosecution had failed to properly authenticate or provide a foundation for the video exhibit displaying the GPS data. On appeal, Richt shifts course. Richt now claims that the witness, Ryan Alford, was unqualified to testify to the GPS system's accuracy because he was not an expert in GPS tracking. Because Richt failed to raise this argument at trial, we review only for plain error. *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008); NRS 178.602 ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). "Plain error affects a defendant's substantial rights when it causes actual prejudice or a miscarriage of justice . . . ." *Jeremias v. State*, 134 Nev. 46, 51, 412 P.3d 43, 49 (2018) (citation modified).

 

Alford rented his personal vehicle to Richt on the day of the murder through Turo, a car rental marketplace. Turo allows private parties to rent their personal vehicles to other private parties. Alford had previously installed a tracker on his personal vehicle, and he could monitor its location through an application called Hum. At trial, Alford explained that Hum was a Verizon program he had used for years and even tested himself for accuracy before installing the devices in his vehicles. During Alford's testimony, the prosecution introduced a video of Alford accessing the GPS data from the Hum program. Richt objected based on a lack of authentication and foundation.

Richt argues that Alford could not explain how Hum worked or certify its accuracy. Alford, however, did not claim specialized knowledge during trial. Alford testified based on his own experience using the Hum application and the typical operation of the GPS inside his vehicle, much like a user of a home security system may testify about footage recorded on a personal surveillance device. "A lay witness may testify to opinions or inferences that are rationally based on the perception of the witness; and . . . helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." *Burnside v. State*, 131 Nev. 371, 382, 352 P.3d 627, 636 (2015) (citation modified) (omission in original) (quoting NRS 50.265). "A qualified expert may testify to matters within their 'special knowledge, skill, experience, training or education' when 'scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* (quoting NRS 50.275). The distinction between expert and lay testimony hinges on whether "the testimony concern[s] information within the common knowledge of or capable of perception by the average layperson

 

or . . . require[s] some specialized knowledge or skill beyond the realm of everyday experience." *Id.* at 382-83, 352 P.3d at 636.

Alford testified neither about the internal workings of the Hum program nor about any technical or scientific conclusions. Alford's testimony was based exclusively on his personal experience using Hum. Because Alford's testimony did not exceed the bounds of lay opinion, we conclude that Richt did not establish plain error, and the district court did not abuse its discretion in admitting the evidence.

Even if the district court had abused its discretion in admitting the contested evidence, any error would be harmless because surveillance footage captured Richt in the Civic circling the parking lot where Griffin worked, and Richt's cell phone data also showed his location in the area during the hours leading to the murder. Alford's testimony merely corroborated other evidence, and Richt was not actually prejudiced by Alford's testimony.

*Jury instruction*

Finally, Richt maintains the district court abused its discretion by failing to instruct jurors that in the event of a guilty verdict, the jury would need to reconvene to consider sentencing. "The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005).

Richt fails to show how the district court's omission of the jury instruction affected his sentence. Moreover, the record does not suggest juror confusion or misunderstanding about their role. Richt's argument rests on the basis that the argued-for jury instruction was a model instruction, but Richt fails to demonstrate the verdict would have been different if jurors knew they needed to reconvene for sentencing. Therefore,



we are unpersuaded that the district court abused its discretion and conclude there is no error.

## CONCLUSION

The district court's decision to exclude the proffered evidence was not an abuse of discretion. A defendant cannot present a self-defense theory premised solely on evidence of a victim's character. Without a threshold showing of self-defense, evidence of the victim's character was inadmissible and lacked relevance. Furthermore, the district court acted within its discretion in admitting lay testimony regarding the GPS tracker on Richt's rental vehicle, and the omission of a requested jury instruction about the jury needing to reconvene for sentencing did not ultimately affect the verdict. Accordingly, we affirm the judgment of conviction.

_____, J.
Bell

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA



(O) 1947A